[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this action for dissolution of marriage, a division of property and other appropriate and equitable relief.
Both parties are represented by counsel, presented testimony, documentary evidence, financial affidavits and proposed orders.
This is a short term marriage. The parties were married on March 12, 1998 in Alaska and returned to Connecticut a couple of weeks later. In a short time they began to argue, and by June 1998, the wife had moved out of the bedroom. The husband claims they argued about living in Ellington — that the wife wanted to move closer to East Hartford where they both worked and that she constantly threatened to shoot him.
Both are employed at Pratt Whitney Aircraft, he works in Instrument Engineering and she is a jet engine mechanic. He works first shift and she works second shift. The wife blames the breakdown on the husband's insatiable sexual demands, especially late at night when she got home from work. (He is 50 years old and she is 37). Her sexual appetite is obviously far different from his and they are truly incompatible. That mutual incomparability led to increasing anger, hostility and the breakdown of the marriage.
The principal issues appear to be four items of jewelry the wife claims were taken by the husband, and contribution to counsel fees. The resolution of these issues primarily comes down to assessing the credibility of the parties. Their testimony on these matters is at odds and it is therefore left to the Court to sift through the conflicting testimony. CT Page 4759
The plaintiff husband testified that on Saturday, January 9, 1999, the defendant wife came home late at night and in the morning told him she was leaving that day. Further, he said she wanted to take her collection of guns and he refused to let her do so, stating she could take them later. He claims she then struck him and he went next door to call the police. The defendant's version of those events is dramatically different. She had worked the second shift, arrived home about 2:00 A.M., and went to sleep on the couch; that approximately 8:30 A.M.; she awoke and at that time the plaintiff came to her in a rage telling her to "get out of the house by the end of the day"; that an argument ensued which resulted in some shoving back and forth and that he stormed out of the house. He went to a neighbor's and called the police. The wife said she was distraught and started packing some things; that she called family members and her friends the Eurtos to try to get some help moving her things and Mr. and Mrs. Eurto came to the house to assist. At that time, the wife took only some personal items, primarily clothing. (Mr. Eurto said they had only about 15 minutes to gather some things).
These circumstances lend credibility to the wife's version that she was ordered out of the house. If she had been planning on moving out that day she would not have had to suddenly call family and friends for assistance. The husband's version is not consistent with the other testimony presented.
Two days later the wife, Mr. Eurto and a police officer returned to the home to take more of her personal belongings. The husband was there at the time and they spent about one hour gathering some belongings including clothing, and books. The wife's good jewelry was kept in a box in a dresser drawer and her less expensive costume "every-day" jewelry was in a jewelry box on top of the dresser. The wife took the box from the top of the dresser but did not take the box which was in the drawer. This January 12th visit was arranged by Mr. Eurto talking to the husband. When Eurto called the plaintiff, the plaintiff several times stated that "he wanted to teach her a lesson", and he exhibited rage toward the defendant.
The defendant next went to the marital home on January 23, 1999, accompanied by the Eurtos and another friend, she had a rented truck and the purpose was to take her bulky things including some furniture. Again there were two versions of what took place: The plaintiff, who was there, states they were there about eight hours and that she took some of his things and all of hers. The defendant testified they were there for only approximately three hours, (Mr. Eurto said it was about two and one half hours). Both Eurto and the CT Page 4760 defendant testified they did not inventory what was taken, but simply took the bulky items, which included the dresser and the dresser drawers where her good jewelry was kept. The Court finds the wife's testimony as corroborated by Eurto to be more credible.
The wife claims five items of jewelry were missing: her engagement ring, two gold chains, a birth-stone ring and a bracelet. The husband denies taking the missing jewelry and counters that she took his wedding ring along with the items of personal property belonging to him.
Again, the husband's version does not jibe with the other evidence. In May 1999, the wife moved for permission to inspect the marital residence to look for missing items of personal property including an inspection of the plaintiff's vault and gun safe.
The motion was granted by agreement. The wife and her attorney went to the inspection and the husband with his attorney were there also. The husband at first refused access to his gun chest, but later on his attorney's advice gave assent. In the chest were his weapons which included rifles, hand-guns, knives and assault weapons. When the weapons were removed, a small jewelry box was found at the bottom of the chest. Among the items there was a gold necklace identified by the wife as the one he had given her. (The plaintiff claims it was his own necklace and not hers). Mr. Eurto, who was also present testified it did look like the one the defendant had. The wife testified it was an unusual necklace with an unusual clasp and that it was clearly hers.
The plaintiff testified the defendant said she intended to sell the jewelry to pay for her attorney, but in fact, she had substantial savings and had more than enough in her bank account for that purpose. Further, while the plaintiff still has possession of the necklace, it was not produced at trial for examination of its characteristics.
In addition to finding the wife's testimony on the issue of the missing jewelry to be more credible, there is an equitable reason for the husband to be held responsible. When he commenced this action, automatic orders went into effect which he was aware of. Those orders require, inter alia, that each party maintain existing homeowner's insurance policies in full force and effect. In violation of these orders, the husband, effective February 19, 1999 eliminated the following items from his homeowners insurance coverage: One lady's wedding ring, one gentleman's wedding ring and one lady's diamond ring. The result is, of course that no insurance claim could be made CT Page 4761 for an unexplained loss and, coincidentally, there would be no insurance investigation if a loss of those items was reported.
We now turn to a consideration of the proposed orders and the orders entered by the Court.
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The plaintiff shall, within, 30 days, return the items of missing jewelry or compensate the defendant as follows:
a. Engagement ring $5989 (Per Exhibit A)
b. Lady's wedding ring $ 512 (Per Exhibit A)
c. Gold chain $ 280
 (Other claimed missing jewelry was either not shown to have been taken by the plaintiff or no evidence as to value).
3. Alimony is not awarded to either party.
4. The defendant shall be entitled to possession of all guns and accessories presently being held under Court order by Carol J. Brozozowy.
5. Each party shall be responsible for the debts shown on their respective financial affidavits.
6. The plaintiff's request for compensation for renovations or repairs to his house is denied. (As the owner of the house, any renovations or repairs inure to his benefit).
7. The plaintiff's request for the return of personal property is denied. There was either no proof or insufficient proof that the defendant took any of the items listed.
8. The plaintiff is ordered to contribute counsel fees for the defendant's attorney in the amount of $4500 within 30 days.
While both parties can afford to pay their own counsel fees, the financial orders in this judgment would be undermined without an order for counsel fees. The defendant has incurred counsel fees and costs of $6400 to date without including the cost of trial (1 day), CT Page 4762 approximately $1000 more.
While the defendant would normally be expected to incur reasonable attorney's fees anyway, under the circumstances of this case, a contribution to those fees is appropriate.
Klaczak, J.